HON. ROBERT E. JONES, III,       *       NO. 2025-CA-0517
ADMINISTRATIVE JUDGE,
AND HON. PAUL N. SENS,            *
HON. CHARLENE LARCH                      COURT OF APPEAL
MASON, HON. MARK J. SHEA,         *
HON. BOBBIE SMITH, HON.                  FOURTH CIRCUIT
JOSEPH B. LANDRY AND              *
HON. STEVEN M. JUPITER, IN                STATE OF LOUISIANA
THEIR CAPACITIES AS THE      * * * * * * *
JUDGES OF THE MUNICIPAL
AND TRAFFIC COURT OF
NEW ORLEANS

VERSUS

AMY TREPAGNIER, IN HER
CAPACITY AS DIRECTOR OF
PERSONNEL OF THE CITY
OF NEW ORLEANS, AND THE
CIVIL SERVICE
COMMISSION FOR THE CITY
OF NEW ORLEANS

CONSOLIDATED WITH:                       CONSOLIDATED WITH:

HON. ROBERT E. JONES, III,               NO. 2025-CA-0607
ADMINISTRATIVE JUDGE, AND
HON. PAUL N. SENS, HON.
CHARLENE LARCH MASON, HON.
MARK J. SHEA, HON. BOBBIE
SMITH, HON. JOSEPH B. LANDRY
AND HON. STEVEN M. JUPITER IN
THEIR CAPACITIES AS THE
JUDGES OF THE MUNICIPAL AND
TRAFFIC COURT OF NEW
ORLEANS

VERSUS

AMY TREPAGNIER, IN HER
CAPACITY AS DIRECTOR OF
PERSONNEL OF THE CITY OF NEW
ORLEANS, AND THE CIVIL
SERVICE COMMISSIONER FOR
THE CITY OF NEW ORLEANS


APPEAL FROM

CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2025-04791, DIVISION "J"
Honorable D. Nicole Sheppard, Judge
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *
(Court composed of Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge
Rachael D. Johnson)


Gilbert R. Buras, Jr.
ATTORNEY AT LAW
710 Carondelet Street
New Orleans, LA 70130


     COUNSEL FOR PLAINTIFFS/APPELLEES


Christina L. Carroll
CITY OF NEW ORLEANS CIVIL SERVICES COMMISSION
1340 Poydras Street
Suite 900
New Orleans, LA 70112


     COUNSEL FOR DEFENDANTS/APPELLANTS


          **REVERSED**
          **FEBRUARY 18, 2026**

*TGC*
*DNA*
*RDJ*

In this consolidated appeal, Amy Trepagnier and the City of New Orleans Civil Service Commission (hereinafter collectively "the City") seek review of two trial court judgments. By judgment dated June 17, 2025, the trial court granted the petition for the writ of mandamus filed by the Hon. Robert E. Jones, III, et al. (hereinafter "the Judges"). The second judgment, dated July 9, 2025, granted the Judges' declaratory judgment.[1] After consideration of the record before this Court and the applicable law, we reverse the June 17, 2025 and July 9, 2025 trial court judgments.

### Facts and Procedural History

In 2024, the Municipal and Traffic Court for the City of New Orleans (hereinafter "Municipal and Traffic Court") Judges, *en banc*, voted to create a new position of "Chief Technology Officer." The job description sought a person to coordinate the court's technological needs with those of other law enforcement entities. The actual job description provides:

---

[1] The Appellees in this matter are the seven judges, in their official capacity, of the Municipal and Traffic Court for the City of New Orleans.

1

Municipal and Traffic [Court] of New Orleans
Court Technology Officer (CTO)

This position will ensure the daily operations and strategic direction of [Municipal and Traffic Court]. The position will coordinate with the [I]nformation Technology and Innovation ("ITI") staff that supports [Municipal and Traffic Court] by providing court leaders with technical advice, guidance, and direction to carry out major plans and procedures. Highly responsible technical work of a specialized nature supporting, developing and maintaining the [Municipal and Traffic Court] software applications is deemed necessary. This individual is responsible for the support and IT coordination associated with key applications or groups of applications.

At the direction of the Judges, Monique Boissiere (hereinafter "Ms. Boissiere"), the Judicial Administrator of Municipal and Traffic Court, submitted a request for funding of the Chief Technology Officer position to the Chief Administrative Office of the City of New Orleans, for the inclusion of the position in the mayor's proposed 2025 Operating Budget. On September 21, 2024, Brandye DeLarge, Administrator for the City of New Orleans, sent an email stating "I was in another meeting this week where [Municipal and Traffic Court's] request for a new technology position came up. The request for this position has been approved and you all are free to move forward with this position."

Thereafter, Ms. Boissiere sent a letter to Amy Trepagnier (hereinafter "Ms. Trepagnier"), Personnel Director for the City of New Orleans, requesting: (1) the classification of the "IT Director" position and (2) the reclassification, from classified to unclassified, of four employees currently holding probation officer and social worker positions at Municipal and Traffic Court because the positions "fall under the direction of the judges of [the court]." The letter noted that "the IT Director position is a new position that falls [under] the direction of the Municipal and Traffic Court judges." On January 10, 2025, in response to Ms. Boissiere's letter, Ms. Trepagnier emailed a letter denying the request for the reclassification

2

of the probation officer and social worker positions.[2] The letter did not address the new "IT Director" position and the Judges were later advised that the request had been referred to the Civil Service Commission (hereinafter "the Commission"), because the approval to add a new position of Chief Technology Officer to the unclassified service was a prerequisite. On March 14, 2025, the Judges' request was considered at the Commission's regular meeting. The Judges argued that the proper designation of the Chief Technology Officer position should be unclassified because the employee would report directly to the Judges, *en banc* and, that La. Const. art. V and La. Const. art. X, §2 provide that all direct employees of the Judges be designated as unclassified. The Commission unanimously denied the Judges' request to add the position of Chief Technology Officer to the unclassified service. The Judges did not appeal this decision.[3]

On May 13, 2025, the Judges filed a petition for a writ of mandamus and declaratory judgment against the City, seeking a judgment directing Ms. Trepagnier to enter the position of Chief Technology Officer onto the unclassified payroll system and holding that any persons employed by the Judges are a part of the unclassified service and that the Commission has no jurisdiction over those employees. The Judges maintained that "to the extent that any payroll enrollment procedure…of the City of New Orleans requires any action of the Personnel Director in order to effect the inclusion in the unclassified pay plan…such action on the part of the Personnel Director is purely ministerial in nature… ." In response

---

[2] In denying the reclassification request, Ms. Trepagnier noted that "[n]either the Louisiana Constitution nor La. R.S. [13:] 2495 *et seq.* except probation officers or social workers from the classified service, unless the judges include these positions in the four positions per judge."

[3] La. Const. art. X, §12(B) provides that "[t]he decision of a commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located, upon application filed with the commission within thirty calendar days after its decision becomes final."

to the Judges' petition, the City filed exceptions of no cause of action, no right of action, lack of subject matter jurisdiction, prematurity and vagueness/ambiguity. On May 28, 2025, the trial court considered the exceptions and denied all the exceptions filed by the City. On the same date, the trial court heard the mandamus. By judgment dated June 17, 2025, the trial court granted the mandamus, entering the following judgment:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Plaintiffs' Petition for Writ of Mandamus is **GRANTED** and the defendant Amy Trepagnier, in her capacity as Personnel Director of the City of New Orleans, is hereby directed to enter onto the unclassified payroll system of the City of New Orleans the position of Chief Technology Officer of the Municipal and Traffic Court of New Orleans.

The mandamus judgment also set the merits of the Judges' request for a declaratory judgment for June 27, 2025. By judgment dated July 9, 2025, the trial court granted the declaratory judgment, entering the following judgment:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the defendant Amy Trepagnier, in her capacity as Personnel Director of the City of New Orleans, is hereby directed to enter onto the unclassified payroll system of the City of New Orleans the position of Chief Technology Officer of the Municipal and Traffic Court of New Orleans.
>
> **IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED** that persons employed by the Judges of the Municipal and Traffic Court of New Orleans are, by the terms of Article 10, §2(B)(10) of the Louisiana Constitution of 1974, in the unclassified service and that the Civil Service Commission for the City of New Orleans has no jurisdiction over either the number or terms of employment of persons so employed.

The City filed two separate appeals, which this Court consolidated.

## Discussion

On appeal, the City asserts numerous assignments of error challenging the trial court's granting of the Judges' request for mandamus and declaratory relief.[4] In reviewing the trial court's rulings on the writ of mandamus and the declaratory judgment, this Court is tasked with determining: (1) whether the trial court erred in granting the writ of mandamus and ordering Ms. Trepagnier to enter the Chief Technology Officer position onto the unclassified payroll system; and (2) whether the trial court erred in granting the declaratory judgment and declaring that any employee of the Judges is unclassified and not subject to the jurisdiction of the Commission.

## Constitutional and Statutory Principles

Prior to addressing the merits of the appeal, we find it necessary to provide a brief history of the structure of Municipal and Traffic Court. Louisiana's courts are primarily constitutionally created. However, some courts, of limited jurisdiction, are provided for by statute and are governed by their respective statute and the constitution. Municipal and Traffic Court is one of the statutorily created courts. La. R.S. 13:2491, *et seq*. Initially two separate courts, Municipal and Traffic Court were consolidated into one court. As a legislatively created city court, funding for Municipal and Traffic Court is provided for by the City of New Orleans and self-generated funds. The court consists of seven (7) judges and has jurisdiction over

---

[4] The City also assigns as error the trial court's denial of its exceptions of subject matter jurisdiction, no right of action and no cause of action. A review of the record reveals that the City's motions for appeal reference only the June 17, 2025 and July 9, 2025 judgments. However, the rulings on the exceptions are interlocutory, and therefore can be reviewed on appeal as part of an unrestricted appeal. *See Succession of Hickman*, 2022-0730, p. 6 (La.App. 4 Cir. 3/15/23), 359 So.3d 584, 590 (citation omitted).

5

city ordinances (including enforcement of traffic violations) and state statute violations, not triable by a jury.

Municipal and Traffic Court consists of both classified and unclassified employees. La. R.S. 13:2496 governs the employees of each judge and provides that:

A. In addition to any employee otherwise provided by law, each judge shall appoint four employees as the judge may deem necessary to expedite the business and functions of the court and shall fix their salaries and benefits.

B. The salaries and benefits shall be paid by the city of New Orleans on the warrant of the appointing judge.

C. The above appointees of the judge, or judges, of the court shall not be included in the civil service system, and shall be considered, for all intents and purposes, as unclassified personnel of the court and shall be included in the unclassified pay plan of the city of New Orleans.

The Clerk of Municipal and Traffic Court is appointed by the judges and is subject to removal, at will, by a majority vote of the judges. The salary and benefits of the clerk are paid by the City of New Orleans. However, the clerk is specifically excluded from the unclassified service under La. Const. art. X, §2, which provides, in pertinent part:

(A) Classified Service. The state and city civil service is divided into the unclassified and the classified service. Persons not included in the unclassified service are in the classified service.

(B) Unclassified Service. The unclassified service shall include the following officers and employees in the state and city civil service:

*** 

(10) employees, deputies, and officers of the legislature and of the offices of the governor, lieutenant governor, attorney general, each mayor and city attorney, of police juries, school boards, assessors, and of all offices provided for in Article V

6

> of this constitution except the offices of clerk of the municipal and traffic courts in New Orleans [5]
>
> ***
>
> **Additional positions may be added to the unclassified service and those positions may be revoked by rules adopted by a commission.**

La. Const. art. X, §2(A)-(B) (emphasis added).

Likewise, the judicial administrator of Municipal and Traffic Court is appointed, and subject to removal, by the judges. Similar to the clerk, the judicial administrator's salary and benefits are paid by the City of New Orleans. However, La. Const. art. X, §2(B) is silent as to whether the judicial administrator's position is included in the unclassified service.

Considering this constitutional and statutory framework, whether a new unclassified position may be created in Municipal and Traffic Court is governed by Civil Service Rule III, §7.1. The rule provides that, at its discretion, the Commission may add additional positions to the unclassified service if certain criteria are met. *Orazio v. Dep't of Police*, 2021-0032, p. 2, n. 2 (La.App. 4 Cir. 5/19/21), 366 So.3d 301, 303. Civil Service Rule III, §7.1 "was enacted pursuant to the constitutional catch-all phrase in La. Const. art. X, §2(B)." *Orazio v. Dep't of Police*, 2019-0230, 2019-0231, p. 12 (La.App. 4 Cir. 6/19/19), 275 So.3d 340, 348. With these principles in mind, we consider the merits of the appeal.

---

[5] La. Const. art. V §32 provides:

> Except for provisions relating to terms of office as provided elsewhere in this Article, and notwithstanding any other contrary provision of this constitution, the following courts and officers in Orleans Parish are continued, subject to change by law; the civil and criminal district courts; the city, municipal, traffic, and juvenile courts; the clerks of the civil and criminal district courts; the civil and criminal sheriffs; the constables and the clerks of the first and second city courts; the register of conveyances; and the recorder of mortgages.

## **Mandamus**

The City asserts the trial court abused its discretion in granting the writ of mandamus and ordering Ms. Trepagnier to enter the Chief Technology Officer position onto the unclassified payroll system. Conversely, the Judges contend that once ordered to enter a position onto the payroll system, Ms. Trepagnier has no discretion and was required to comply.

This Court has articulated the following standard of review regarding a trial court's ruling on a writ of mandamus:

> Generally, an appellate court reviews a trial court's judgment on a writ of mandamus under an abuse of discretion standard. Also, a trial court's findings of fact in a mandamus proceeding are subject to a manifest error standard of review. However, questions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the *de novo* standard of review, and the appellate court is not required to give deference to the lower court in interpreting a statute.

*Commodore v. City of New Orleans*, 2019-0127, p. 9 (La.App. 4 Cir. 6/20/19), 275 So.3d 457, 465-66 (internal citations omitted).

Mandamus is an extraordinary remedy, which must be used sparingly by the court and only to compel an action that is clearly provided by law. "A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty… ." La. C.C.P. art. 3863. "A 'ministerial duty' is one 'in which no element of discretion is left to the public officer… .'" *Jazz Casino Co., L.L.C. v. Bridges*, 2016-1663, p. 5 (La. 5/3/17), 223 So.3d 488, 492 (quoting *Hoag v. State*, 2004-0857, p. 7 (La. 12/1/04), 889 So.2d 1019, 1024). The Louisiana Supreme Court has provided that "[a] ministerial duty is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." *Hoag*, 2004-0857, p. 7, 889 So.2d at 1024 (citation omitted). "If any element of discretion is vested to the public officer, mandamus is not proper." *State through Orleans Par.*

*Crim. Dist. Ct. v. City of New Orleans through City Council*, 2017-1051, p. 5 (La.App. 4 Cir. 10/3/18), 318 So.3d 93, 96 (citation omitted).

The City maintains the trial court abused its discretion in determining that enrolling an individual onto the City of New Orleans' unclassified payroll system constitutes a ministerial duty. Conversely, the Judges contend that once Ms. Trepagnier was ordered to enter a position onto the payroll system, she did not have the discretion to disobey that order. Thus, according to the Judges, entering the position onto the payroll system constitutes a ministerial duty for which mandamus relief is appropriate. The trial court agreed with the Judges and found that once ordered to act, Ms. Trepagnier as Personnel Director, did not have the discretion to disobey the order. We disagree. The issue is not whether the "act" of entering the position onto the payroll system is a ministerial duty. Rather, we define the inquiry as whether Ms. Trepagnier had the legal authority to perform the "act" without approval from the Commission.

The law is clear that any position not specifically enumerated as unclassified, is a classified position. La. Const. art. X §2. Further, Civil Service Rule III, § 7 is entitled "Unclassified Positions" and §7.1 provides that "[a]t its discretion, the City Civil Service Commission may add additional positions to the unclassified service" if certain criteria are met. *See also Orazio*, 2021-0032, p. 2, n. 2, 366 So.3d at 303. The Chief Technology Officer position is not currently listed under the unclassified positions enumerated in La. Const. art. X §2(B), and the discretion to add additional positions to the unclassified service rests with the Commission. "A writ of mandamus is appropriate only if the court finds the following elements: (1) [a] public officer has refused to perform a ministerial duty, which is clearly provided by law, and (2) mandamus is the only available remedy

9

or the delay caused by use of any other remedy would cause injustice." *Reg'l Transit Auth. v. Kahn*, 1999-2015, 1999-2071 p. 6 (La.App. 4 Cir. 8/26/99), 742 So.2d 960, 964. "Both requirements must be met in order for a court to properly make a writ of mandamus peremptory." *Id*. We find that the Judges' request fails to satisfy the first element and thus, mandamus is not the proper procedural vehicle for their request. While Ms. Trepagnier is a public officer, the act of adding a position to the unclassified payroll system, without the Commission's approval, is not "clearly provided by law." The Judges rely on La. Const. art. X, §2(B)(10) and La. Const. art. V, §32, *in pari materia*, for the proposition that any employee of the Judges falls within the unclassified service. However, this reliance is misplaced as the above referenced constitutional articles focus on the classification status of the Judges' employees and not the legal duties of Ms. Trepagnier. Ms. Trepagnier referred the matter to the Commission because the Louisiana Constitution and the Civil Service Rules dictate that any position added to the unclassified service must be approved by the Commission. The Judges cannot seek to order Ms. Trepagnier to perform a duty when her legal authority is not clear. We find the Judges' attempt to obtain mandamus relief is an effort to circumvent the constitutionally mandated process to obtain additional unclassified positions. Under the Louisiana Constitution and the Civil Service Rules only the Commission can ratify this act. Accordingly, we find the trial court abused its discretion in granting the writ of mandamus and ordering Ms. Trepagnier to enter the Chief Technology Officer position onto the unclassified payroll system, without the approval of the Commission.

## Declaratory Judgment

The City asserts the trial court abused its discretion by granting the Judges' declaratory judgment.[6] The judgment ordered Ms. Trepagnier to enter the Chief Technology Officer position onto the unclassified payroll system and declared that any position held by a person employed by the Judges constitutes an unclassified position, over which the Commission has no jurisdiction. The Judges maintain that pursuant to La. Const. art. X, §2(B)(10), any employee reporting to the Judges is considered an unclassified employee and not subject to regulation by the Commission. The Judges further contend that the limit of four (4) unclassified employees per judge, set forth in La. R.S. 13:2496, is not applicable in this case because the Chief Technology Officer would report to the Judges, *en banc*.

La. C.C.P. art. 1871 sets forth the scope of declaratory judgments and provides, in pertinent part, that "[c]ourts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed…and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." The purpose of a declaratory judgment "is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and they are to be liberally construed and administered." La. C.C.P. art.

---

[6] "It is well settled that with regard to the standard of review of a declaratory judgment action that '[o]n appeal, the scope of appellate review is confined to a determination of whether or not the trial court abused its discretion by granting or refusing to render a declaratory judgment." *Battle v. Watson Invs., Inc.*, 2006-0202, 2006-0203, pp. 2-3 (La.App. 4 Cir. 11/21/06), 946 So.2d 226, 228 (quoting *Edgar Benjamin Fontaine Testamentary Tr. v. Jackson Brewery Marketplace*, 2002-2337, pp. 4-5 (La.App. 4 Cir. 5/7/03), 847 So.2d 674, 677) (alteration in original). "Although [the trial court's] decision is subject to an abuse of discretion standard of review, the judgment itself is still reviewed under the appropriate standard of review. Thus, questions of law are reviewed *de novo*, while questions of fact are subject to a manifest-error standard of review." *Robin v. Creighton-Smith*, 2021-0737, pp. 4-5 (La.App. 4 Cir. 5/11/22), 340 So.3d 174, 179 (internal citations omitted) (citation omitted). This is a question of law.

1881. "A party is entitled to relief by declaratory judgment when its rights are uncertain or disputed in an immediate and genuine situation, and the declaratory judgment will remove the uncertainty or terminate the dispute." *Schwegmann Family Tr. No. 2 v. White III, LLC*, 2011-0611, p. 12 (La.App. 4 Cir. 9/30/11), 76 So.3d 1228, 1235 (citation omitted).

Before reviewing the trial court's ruling granting the declaratory judgment, we must first determine whether the trial court had jurisdiction. "The issue of subject matter jurisdiction may be raised at any time, even by the court on its own motion, and at any stage of an action." *Catrambone v. Liotta*, 2024-0456, 2024-0457, pp. 6-7 (La.App. 4 Cir. 2/14/25), 414 So.3d 686, 691, *writ denied*, 2025-00321 (La. 5/29/25), 410 So.3d 146 (citation omitted).[7] "Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted." La. C.C.P. art. 2. "A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void." La. C.C.P. art. 3. The determination of the validity of the judgment granting the declaratory judgment is contingent upon whether the trial court had jurisdiction over the proceedings.

Subject matter jurisdiction is derived from the Louisiana Constitution or by legislative enactment. *Senior v. Overlog, Inc.*, 2024-0541, p. 17 (La.App. 4 Cir. 4/21/25) 414 So.3d 965, 978 (citation omitted). This Court reviews whether a court has subject matter jurisdiction under the *de novo* standard of review. *Allen v. State*,

---

[7] We note that the City raised the issue of subject matter jurisdiction in the trial court through an exception of subject matter jurisdiction on other grounds. Our analysis of the issue of subject matter jurisdiction differs from the arguments raised by the City.

2024-0294, p. 4 (La.App. 4 Cir. 11/14/24), 402 So.3d 34, 36 (citation omitted). "[A] district court shall have original jurisdiction of all civil and criminal matters." La. Const. art. V, §16(A). There is a unique jurisdictional split between Orleans Parish civil and criminal courts. Orleans Parish Civil District Court "has the same civil jurisdiction as the district courts throughout the state, except as otherwise provided by law." La. R.S. 13:1137. Thus, there are limited cases which fall under the exception of La. R.S. 13:1137, i.e. "except as otherwise provided by law." We find this case to be one of those exceptions.

The Judges seek to declare that they are legally afforded the unfettered right to create a new unclassified position, without the approval of the Commission. Their argument hinges on the fact that the new Chief Technology Officer will report to the Judges, *en banc*. The Commission's authority is embedded in the Louisiana Constitution and the Civil Service Rules, and the Commission "functions as a governmental hybrid whereby it exercises powers similar to those exercised by all three branches of government—executive, legislative, and quasi-judicial." *Hellmers v. Dep't of Fire*, 2019-0420, p. 8 (La.App. 4 Cir. 10/30/19), 364 So.3d 370, 376 (citations omitted). The decision of whether a new position should be classified or unclassified is left to the Commission. La. Const. art. X, §2. Thus, the decision is not a civil matter within the meaning of La. Const. art. V, §16(A). The controversy at issue is related solely to the Commission's denial of the Judges' request to create a Chief Technology Officer position in the unclassified service. To find, in its present posture, that the trial court could issue a declaration which effectively circumvents the Commission's decision, would render the constitutional authority granted to the Commission meaningless. *See* La. Const. art. X §2.

13

Further, whether a justiciable controversy exists remains uncertain. Our jurisprudence has limited the availability of a declaratory judgment by holding that "courts will only act in cases of a present, justiciable controversy… ." *Church Point Wholesale Beverage Co. Inc. v. Tarver*, 614 So.2d 697, 701 (La. 1993) (citation omitted). A justiciable controversy consists of:

> [A]n existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further…the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgement.

*Edgar Benjamin Fontaine Testamentary Tr.*, 2002-2337, p. 6, 847 So.2d at 678 (quoting *Abbott v. Parker*, 259 La. 279, 308, 249 So.2d 908, 918 (1971)). Our Supreme Court has stated that "[a] court must refuse to entertain an action for a declaration of rights if the issue presented is…based on a contingency which may or may not arise." *Am. Waste & Pollution Control Co. v. St. Martin Par. Police Jury*, 627 So.2d 158, 162 (La. 1993) (citation omitted).

Ms. Trepagnier testified that an "IT director" position was available in the classified service with a salary commensurate with the Chief Technology Officer position sought by the Judges. However, the record is devoid of any document outlining the job duties of the technology position in the classified service. Further illustrating this point is the fact that at the Civil Service hearing, considering the Judges' request, one of the commissioners noted "[t]he job duties being the same are not determinative."[8] The trial court was presented with a hypothetical question regarding the authority of the Judges to create a new unclassified position. That

---

[8] We could find no authority prohibiting the Judges from submitting their request to the Commission. Should the Commission's decision remain the same, the Judges' remedy is to seek review of the Commission's ruling in this Court. *See* La. Const. art. X, §12(B).

14

decision was contingent upon whether a similar position exists in the classified service. Since there is a contingency involved, it is impossible to state with certainty that the Judges have an absolute right to create an unclassified position. A declaratory judgment cannot lie when the issue is based upon a contingency because, in that scenario, there is no justiciable controversy. *See Am. Waste & Pollution Control Co.*, 627 So.2d at 162. As observed by our Supreme Court, jurisdiction over a controversy has been declined "when actions do not involve specific adversarial questions asserted by interested parties based on existing facts." *Prator v. Caddo Par.*, 2004-0794, p. 6 (La. 12/1/04), 888 So.2d 812, 816 (citation omitted). Therefore, declaratory relief was not proper.

We find that the trial court lacked subject matter jurisdiction to consider the Judges' declaratory judgment under La. R.S. 13:1137. Further, based on the trial court record and the facts presented, we are restricted in our efforts to resolve this controversy as the record does not contain pertinent evidence. *See Appeal on Behalf of First Par. Ct. Emps. from Pers. Bd. Order Terminating Civ. Serv. Status of First Par. Ct.*, 454 So.2d 1190, 1193 (La. 4th Cir. 1984). Accordingly, the trial court erred in granting the declaratory judgment ordering Ms. Trepagnier to enter the Chief Technology Officer position onto the unclassified payroll system and declaring that any position held by a person employed by the Judges constitutes an unclassified position, for which the Commission has no jurisdiction.

## Conclusion

While Ms. Trepagnier is a public officer, her duty of adding a position onto the unclassified payroll system, without the Commission's approval, is not "clearly provided by law." Thus, mandamus relief is not appropriate and the trial court erred in granting the Judges' writ of mandamus. Further, because the trial court

15

lacked subject matter jurisdiction to consider the matter and there is no justiciable controversy presented under the facts as alleged, the trial court erred in granting the Judges' petition for declaratory judgment.

## **<u>Decree</u>**

For the foregoing reasons, we reverse the June 17, 2025 and July 9, 2025 trial court judgments.

**REVERSED**

16